# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

**ROBERT BRIAN MORGAN,**

**Plaintiff,**

**-vs-** **Case No. 3-:05-CV-123**

**DEL GLOBAL TECHNOLOGIES CORP.,**

**Judge Thomas M. Rose**

**Defendant.**

---

**ENTRY AND ORDER OVERRULING MORGAN'S MOTION TO DISMISS WITHOUT PREJUDICE (Doc. #26); GRANTING IN PART AND OVERRULING IN PART DEL GLOBAL'S MOTION TO STRIKE (Doc. #38); GRANTING DEL GLOBAL LEAVE TO SUBMIT A MOTION FOR REASONABLE ATTORNEYS' FEES AND GRANTING IN PART AND OVERRULING IN PART DEL GLOBAL'S MOTION FOR SUMMARY JUDGMENT (Doc. #27)**

---

This matter arises from the employment and subsequent termination of Plaintiff Robert Brian Morgan ("Morgan") by Defendant Del Global Technologies Corp. ("Del Global"). Morgan was employed by Del Global as a Regional Sales Manager from October 1, 1998 through May 30, 2003.

Morgan's Complaint against Defendant Del Global was originally filed in the Court of Common Pleas of Greene County, Ohio, on June 1, 2004. It was served nine months later on Del Global on March 2, 2005, and it was removed to this Court on April 4, 2005, based upon this Court having federal question jurisdiction. (Doc. #1.)

Count One of Morgan's Complaint is for breach of an express contract. Count Two is for breach of an implied contract. Count Three is for breach of an employment contract with regard

to vacation and sick pay benefits. Count Four is for failure to pay various benefits including sick leave, personal leave and vacation pay in violation of the Fair Labor Standards Act ("FLSA"). Count Five is for failure to pay benefits in violation of Ohio law and the federal Employee Retirement Income Security Act ("ERISA"). Count Six is for failure to pay benefits in violation of Ohio Rev. Code § 4113.15, and Count Seven is for conversion and promissory estoppel with regard to alleged commissions and benefits owed to Morgan. A procedural background will first be set forth followed by a factual background and an analysis of the pending motions.

**PROCEDURAL BACKGROUND**

A Preliminary Pretrial Order ("PPTO") was issued on December 6, 2005, pursuant to a Preliminary Pretrial Conference conducted by the Court on that same day. (Doc. #14.) The PPTO set a discovery deadline of August 31, 2006, and a deadline for motions not directed to the pleadings of September 29, 2006. (Id.)

On August 16, 2006, the Parties sought to amend the PPTO to reset the discovery cutoff date to April 13, 2007, and the deadline for motions not directed to the pleadings to May 21, 2007. (Doc. #17.) The reason given is that discovery involved certain witnesses who are former Del Global employees and who resided in multiple states. (Id.) Deposition of these former employees, according to the Parties, would require coordination of several depositions outside of Ohio, including New York and possibly New Jersey. (Id.) The Parties also stated that "it has become apparent that additional time will be necessary to complete the discovery necessary to adequately investigate all claims and defenses to the issues before the Court." (Id.) In addition, stated as "unrelated to the foregoing request," the Parties indicated that lead defense counsel was expected to be unavailable for several months due to being on maternity leave. (Id.) This motion

was denied on September 7, 2006, because the Parties were ordered to provide an updated 26(f) report and had failed to do so.

On September 21, 2006, the Parties submitted a renewed motion to modify the PPTO (doc. #18) and a revised 26(f) report[1] (doc. #19). In addition to the reasons stated in the original motion to amend the PPTO, this Motion indicated that Del Global had requested discovery which had not yet been received and would require additional time to review. In this instance, the Parties sought to reset the discovery cutoff to May 11, 2007, and the deadline for filing motions not directed to the pleadings to June 30, 2007.

Following a Court-conducted telephone conference on October 17, 2006, the discovery deadline was reset to May 11, 2007, and the deadline for motions not directed to the pleadings was reset to June 29, 2007. The trial and other dates subsequent to the deadline for motions not directed to the pleadings were also reset.

On May 17, 2007, this Court conducted its status conference following discovery. At this time, the Court was informed that Morgan had not completed discovery and wished to take certain depositions. Del Global indicated that its discovery was complete and objected to any further extensions of the discovery deadline.

The Court then afforded Morgan the opportunity to provide a written brief as to his need for additional discovery and Del Global was given an opportunity to respond. Morgan indicated that he needed to propound 25 Interrogatories and 25 Requests for Production of Documents, to obtain the depositions of three individuals who presumably are current Del Global employees and to obtain the depositions of five individuals who presumably are former Del Global

[1]Del Global indicates that it alone had to prepare and file this revised 26(f) report.

employees. Morgan argued that this additional discovery would not burden Del Global but offered no reason why the discovery was not completed within the Court-established deadlines.

Del Global opposed an extension of the discovery deadline or any other deadlines. Del Global argued that the deadlines should not be extended because the discovery deadline and other dates were extended once before "due to Plaintiff's counsel's dilatory conduct," because Morgan offered no reasons for failing to conduct discovery within the three years since his Complaint was initially filed and because Del Global would be prejudiced by any further extensions.

Del Global also described its extensive efforts to obtain discovery and to take Morgan's deposition. Further, Morgan, according to Del Global, had never conducted any discovery in this action and had yet to provide his Rule 26(a)(1) disclosures.

In an Entry and Order (doc. #25) filed on June 7, 2007, the Court found that Morgan had not shown good cause to modify the scheduling order that was currently in effect and that Del Global would be prejudiced by an extension of the deadlines. Morgan's Petition Seeking Leave To Obtain Additional Discovery was, therefore, overruled. The Court-established deadline for filing motions not directed to the pleadings of June 29, 2007, remained in effect.

On June 21, 2007, Morgan filed his Motion To Dismiss Without Prejudice (doc. #26) to which Del Global responded (doc. #30) and Morgan did not reply. Then, on June 29, 2007, Del Global filed its Motion for Summary Judgment (doc. #27) to which Morgan has responded (doc. # 30) and Del Global has replied (doc. #36). Finally, on August 20, 2007, Del Global filed its Motion To Strike (doc. #38) portions of the Rule 56 evidence presented by Morgan in his response to Del Global's Motion for Summary Judgment. The time has run and Morgan has not

responded to Del Global's Motion To Strike. In sum, Morgan's Motion To Dismiss (doc. #26), Del Global's Motion for Summary Judgment (doc. #27) and Del Global's Motion To Strike (doc. #38) are all pending and ripe for decision.

**FACTUAL BACKGROUND**[2]

Morgan was employed by Del Global as a Regional Sales Manager from October 1, 1998 to May 30, 2003, when his employment was terminated due to his position being eliminated. (Deposition of Robert Brian Morgan ("Morgan Dep.") 47 May 1, 2003; Affidavit of Robert Brian Morgan ("Morgan Aff.") ¶ 2 Aug. 6, 2007.) Del Global produced and sold DC high voltage power supplies through four product lines identified as "Bertran," "RFI," "DynaRad," and "Del Power Group." (Morgan Dep. 20, 34.)

As a Regional Sales Manager, Morgan managed and supported manufacturers' representatives. (Id. 20.) His activities included the development, identification and support of customers, sales of Del Global's products and training of the manufacturers' representatives. (Id. 21.) Morgan was initially responsible for the Midwest Region which includes the states of Arkansas, North Dakota, South Dakota, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Michigan, Minnesota, Missouri, Nebraska, Ohio, Oklahoma, Western Pennsylvania, Texas, West Virginia and Wisconsin. (Morgan Dep. 25; Def. Mot. Summ. J. Ex. 3.) Canada was later added to his service territory. (Morgan Dep. 25.) Morgan was also the Key Account Manager for MDS Sciex and GE-OEC. (Def. Mot. Summ. J. Ex 3.)

At the inception of Morgan's employment, Del Global paid compensation to sales

---

[2]The Factual Background does not include certain evidence submitted by Morgan that has been excluded pursuant to Del Global's Motion To Strike addressed below.

managers under a group-wide bonus system which did not include individual sales incentives. (Morgan Dep. 38-40.) For the 2002 fiscal year[3], a new program of compensation was instituted by Del Global President Dan Pisano ("Pisano"). (Id.) The new program, termed the "Sales Manager Compensation Program," implemented a structure of base compensation plus commissions on sales. (Id.)

The written Sales Manager Compensation Program was initiated by Pisano on April 9, 2002, and was accepted by Morgan on June 21, 2002. (Def. Mot. Summ. J. Ex. D[4].) That same day, Morgan approved a written amendment to the Sales Manager Compensation Program that added sales to GE-OEC and MDS Sciex to Morgan's existing Midwest territory base. (Id.)

The Sales Manager Compensation Program has two elements according to the document: a base annual salary and a quarterly sales incentive. (Id.) The document sets forth the territory and the sales incentive program. (Id.) Under the sales incentive program, incentive payments are made based upon received bookings of defined commissionable items. (Id.) The bookings must be a result of orders received from Morgan's sales efforts. (Id.)

The official Del Global Conversion Group Order Acceptance process is used to signify incentive eligibility. (Id.) Prerequisites for Del Power Conversion Group order acceptance are: (A) Customer Purchase Order/Signed Customer Contract; (B) Agreed and fully documented Contract Terms and Conditions; (C) Documentation of any special guarantees/penalty clauses;

---

[3]Del Global's 2002 fiscal year began on August 1, 2001, and ran through July 31, 2002. Del Global's 2003 fiscal year began on August 1, 2002 and ran through July 31, 2003.

[4]A document entitled "Sales Manager Compensation Program" and a document entitled "Amendment To Sales Manager Compensation Program" are included in the record as Ex. D to the Defendant's Motion for Summary Judgment, as Ex. 3 to Morgan's Deposition and as Exs. A and B to Morgan's Affidavit.

and (D) All other order logging documentation, fully completed and approved, and detailing appropriate Sales Manager Credit splits, if appropriate. (Id.)

The Sales Manager Compensation Program document also identifies the commissionable items. (Id.) They are: (A) High Voltage Power Supplies, Capacitor Charging systems, DC/DC Converters and Hi-Pot Testers and their controls; (B) High Voltage Transformers, Chokes and Reactors, and HV Divider/Meter Multipliers; (C) Monoblock products; and (D) Non-recurring engineering charges (NRE) is commissionable at a rate of 0.2% on all amounts. Non-commissionable items are identified as: (A) Order Adjustments, credits, taxes, returns and shipping expenses and (B) Spare Parts Orders; Repair Parts or Repair Orders; Direct U.S. Government Orders; Underwriters or BRH Charges; Field Service Orders; Service School Fees; Replacement Orders; Test and Evaluation Charges; Documentation Orders, such as drawings, manual tests, data, ATP'S. (Id.) Also non-commissionable are any pass-through costs and change orders received more than six months after receipt of the initial order unless the Sales Manager was directly involved in identifying, developing and negotiating the Change Order. (Id.) Finally, Del Global reserves the right to "waive/reduce incentive payments where the Sales Manager has had limited participation in the assessable event, or when violations to the policy or Company guidelines are determined to have taken place. (Id.)

The commission rates set forth in the Sales Manager Compensation Program document are 0.5% on commissionable items totaling below $10,000,000 and 1% on commissionable items totaling over $10,000,000. (Id.) No more than $100,000 in sales incentive compensation will be paid to the Sales Manager within the plan year. (Id) The document also indicates that it is "designed to provide a comprehensive summary of the Del Power Conversion Group Sales

Incentive Program for Fiscal 2002, excluding RFI Corp." and neither represents a precedent for future years or a binding contract between the parties (Id.) Finally, the Controller is to be responsible for the calculation of monies due under the terms of the Sales Manager Compensation Program. (Id.)

Morgan approved a document entitled "Amendment To Sales Manager Compensation Program" on the same date as he approved the document entitled "Sales Manager Compensation Program." (Id.) The amendment provides that sales to GE-OEC and to MDS Sciex from the Western Region are added to Morgan's commissionable base. (Id.) Commission is paid for both at a 0.5% rate. (Id.)

Morgan's 2002 Sales Commissions

When Morgan had not received his fiscal year 2002 sales commissions by late 2002, he contacted Pisano. (Morgan Aff. ¶ 7.) Pisano indicated that the processing was underway for the payout of the fiscal year 2002 commissions. (Id.)

In February of 2003, Morgan was given the final fiscal year 2002 sales reports that he was asked to review and comment upon. (Id. ¶ 10.) He reviewed this information and concluded that his commission would surpass the $100,000 cap. (Id.) In mid-March of 2003, Morgan received a commission payment that he believes is substantially less than that indicated on the sales reports that he had been asked to review. (Id. ¶ 11.)

Morgan next asked Annette DiGorga ("DiGorga"), Del Global's Vice President of Finance, to confirm the sales figures against which the calculation of his compensation was applied. (Id. ¶ 12.) DiGorga then sought additional documentation from Edith Williams. (Id. ¶ 13, Ex. D.) On March 21, 2003, Edith Williams provided what she represented to be the last

reconciled sales report from which she and Pisano worked. (Id. ¶ 14, Exs. D, E.)

Morgan discovered that the sales report received from Edith Williams on March 21 did not include sales for one line of products identified as "Del High Voltage." (Id. ¶ 14.) On March 28, he reported this information back to Edith Williams. (Id. ¶ 15, Ex. F.) Thereafter, Morgan received a reconciled sales report[5] inclusive of all customers which rectified the omitted items. (Id. ¶ 16.) Based upon the reconciled sales report received from Edith Williams, Morgan determined that he booked $19,491,207.93 in sales[6]. (Id. ¶ 17.) This amount of bookings, according to Morgan, should result in a commission that exceeds the $100,000 cap.

Before the issue was resolved to Morgan's satisfaction, Pisano left his position and Steven Swech ("Swech") was move into Pisano's assignment. (Morgan Dep. 59-60.) Morgan's position was eliminated shortly thereafter and Edward Farris ("Farris"), at the time Del Global Senior Vice President Corporate and Organization Development, attempted to obtain an Agreement and Release of Claims from Morgan. (Morgan Dep. Ex. 26.)

Del Global's severance policy in effect at the time requires that an employee sign and return an "Agreement and Release of Claims" before receiving severance benefits.[7] (Undated Declaration of Annette DiGorga ("DiGorga Decl.") Ex. F.) When Morgan declined to sign the release, Farris became involved with Morgan's compensation issues. (Morgan Aff. ¶ 28, Morgan Dep. 60, 91, 101, Ex. 26.)

---

[5]The reconciled sales report is part of Ex. G to Morgan's Affidavit. The first page of Ex. G to Morgan's Affidavit is a spreadsheet prepared by Morgan allegedly based upon the sales report.

[6]This is summarized in a spreadsheet prepared by Morgan and included as part of Ex. G to his Affidavit.

[7]Nothing is said in this policy regarding withholding of other compensation such as commission or pay for unused accrued vacation. (Id.)

Farris forwarded his own reconciliation of Morgan's 2002 commission calculation to Morgan. (Morgan Dep. Ex. 16.) Morgan found that Farris's reconciliation omitted sales to GE for the second, third and fourth quarters. (Morgan Dep. 102, Ex. 16.) It also omitted nonrecurring engineering charges in the amount of $9,718.15. (Morgan Dep. 103.) The 2002 Sales Commission amount owed to Morgan was never resolved to Morgan's satisfaction. (Compl. ¶ 8; Morgan Dep. 60-61.)

According to Farris's Declaration, Del Global calculated and paid Morgan all 2002 sales commissions that he earned. (Declaration of Edward Farris ("Farris Decl.") ¶ 3 June 22, 2007.) Morgan was paid a total of $60, 442.58. (Id.) When Morgan questioned the amount he was paid for his 2002 sales commissions, Del Global reconfirmed that the amount that they paid was accurate. (Id. ¶ 9.)

Morgan's 2003 Sales Commissions

In December 2002, Morgan met with Pisano to discuss the 2003 commission program. (Morgan Aff. ¶ 9.) Morgan says that, at that time, Pisano indicated that the commission program for 2003 would remain unchanged from the commission program for 2002. (Id.) Further, neither party has submitted a written document specifying a 2003 commission program although, according to Morgan, representations of DiGorga embodied in a 2003 partial reconciliation incorporates the same formula for computing commissions as the Sales Manager Compensation Program document used in fiscal year 2002. (Morgan Aff. ¶ 21, Ex. J.) Representations embodied in a final computation of commissions provided to Morgan by Farris also incorporate the same formula for computing commissions as the Sales Manager Compensation Program document used in fiscal year 2002. (Morgan Aff. ¶ 25, Ex. L.)

Initially, DiGorga provided a calculation of fiscal year 2003 commissions earned through March 21, 2003, that totaled $39,182.69. (Morgan Aff. ¶ 21, Ex. J.) On June 6, 2003, Farris provided a letter indicating that the total commissions earned by Morgan through his termination date of May 30, 2003, amounted to $6,127.45. (Morgan Aff. ¶ 25, Ex. L.) There is also evidence that Del Global has not yet paid the $6,127.45 to Morgan. (Morgan Aff. Ex. N, Ex. O.) Del Global has refused to pay Morgan until Morgan signs the Agreement and Release of Claims document which makes no mention of the withholding of any compensation other than severance benefits. (Id.) Morgan now disputes the amount of 2003 commissions that Del Global has calculated but he does not know how much should have been paid because he was never provided his final sales figures through the termination of his employment. (Morgan Dep. 61, 92, 119.)

Farris testifies that Del Global calculated Morgan's total 2003 sales commissions to be $6,127.45 and the Del Global used a different rate for certain customer business than the rate used to calculate Morgan's 2002 commissions. (Farris Decl. ¶ 5-6.) The 2003 Sales Commission amount owed to Morgan was also never resolved to Morgan's satisfaction. (Compl. ¶ 9; Morgan Dep. 60-61.)

Morgan's Vacation Pay

Morgan also disputes the amount of vacation pay that he received when his employment was terminated. (Morgan Aff. ¶ 27.) In the termination letter that Morgan received from Farris, Farris indicates that Morgan would be paid for any accrued but unused vacation. (Morgan Dep. Ex. 17.)

Del Global's records indicate that Morgan had an approved "Rollover of 2002 & Prior"

of 18.5 vacation days. (Morgan Dep. Ex. 21.) Morgan confirmed this amount with Pisano on December 13, 2002. (Morgan Aff. ¶ 26.) Morgan was also vested with an additional 7.5 days of vacation earned in 2003 as confirmed by Farris. (Morgan Dep. Ex. 24.) Morgan testifies that he used 5 days of vacation in 2003. (Morgan Aff. ¶ 26.) According to Morgan, he was therefore entitled to 21 earned but unused vacation days upon the termination of his employment. (Id.)

Del Global paid Morgan for 11 earned but unused vacation days upon the termination of his employment. (Morgan Dep. Ex. 24.) The 11 days represents 8.5 days carried over from 2002, plus 7.5 days accrued in 2003 minus 5 days of vacation taken in 2003. (Id.) Farris now testifies that Morgan was paid for all unpaid accrued vacation that he was owed when his employment ended. (Farris Decl. ¶¶ 7, 11.)

**MORGAN'S MOTION TO DISMISS**

Morgan seeks to dismiss his Complaint without prejudice pursuant to Fed. R. Civ. P. 41(a)(2). He seeks to dismiss the pending action without prejudice subject to refiling if and when appropriate fact witnesses whose whereabouts cannot presently be ascertained can be located. Del Global opposes this Motion because Morgan's articulated reasons for dismissal without prejudice are allegedly disingenuous and because it will allegedly be unfairly prejudiced if Morgan is permitted to dismiss his Complaint without prejudice.

Rule 41(a)(2) provides that, except as provided in Rule 41(a)(1), an action is not to be dismissed at the plaintiff's request except upon order of the court and upon such terms and conditions as the court deems proper. Fed. R. Civ. P. 41(a)(2). "Whether dismissal should be granted under the authority of Rule 41(a)(2) is within the sound discretion of the district court." *Rosenthal v. Bridgestone/Firestone*, 217 F. App'x 498, 500 (6th Cir. 2007). An abuse of

discretion is generally found only where the defendant would suffer "plain legal prejudice" as a result of a dismissal without prejudice. *Id.* (citing *Grover by Grover v. Eli Lilly and Co.*, 33 F.3d 716, 718 (6th Cir. 1994)). In determining whether a defendant would suffer "plain legal prejudice," courts should consider such factors as the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff, insufficient explanation for the need to take a dismissal and whether a motion for summary judgment has been filed by the defendant. *Id.* (citing *Grover*, 33 F.3d at 718).

For example, a defendant suffers plain legal prejudice where the motion to dismiss was filed after discovery was closed, the defendants were almost certain to move for summary judgment and plaintiff's explanation for the need to dismiss was convoluted. *Maldonado v. Thomas M. Colley Law School*, 65 F. App'x 955, 957 (6th Cir. 2003). A defendant also suffers plain legal prejudice where a case had been pending for over four years, the defendants had put considerable time and effort into defending plaintiff's claims, the court had denied defendant's motion to dismiss and motion for summary judgment and only twelve days remained before trial when the motion to dismiss was filed. *Linthicum v. Johnson*, No. 1:02-cv-480, 2006 WL 3422687 at *3 (S.D. Ohio Nov. 28, 2006).

In this case, Morgan's Complaint was filed over three years ago. He has not yet conducted any discovery even though the original discovery and dispositive motion deadlines were extended by nine months.[8] Now, just one week before the dispositive motion deadline, Morgan seeks to dismiss his Complaint without prejudice.

Morgan seeks to dismiss without prejudice because he allegedly cannot locate certain

[8]The Court refused his request to further extend the discovery deadline. (Doc. #25.)

witnesses. However, this argument may be disingenuous at best. There is no evidence that Morgan has ever attempted to locate these witnesses and Del Global has shown how easily these witnesses could have been found.

Further, Del Global will suffer plain legal prejudice if Morgan is now permitted to dismiss his Complaint without prejudice. Del Global has defended the case for more than two years, has completed its discovery and investigation and has, one week after Morgan's Motion To Dismiss was filed, filed its Motion for Summary Judgment that is now pending before the Court. Finally, Morgan has not been diligent in prosecuting his complaint, particularly in pursuing discovery. Therefore, Morgan's Motion To Dismiss **without** prejudice is OVERRULED.

Del Global argues that Morgan's Complaint should be dismissed **with** prejudice. A district court may dismiss a complaint with prejudice in response to a motion to dismiss without prejudice brought pursuant to Fed. R. Civ. P. 41(a)(2). *U.S. v. One Tract of Real Property Together With All Buildings, Improvements, Appurtenances, and Fixtures*, 95 F.3d 422, 425 (6th Cir. 1966). In taking such an action, the district court must give the plaintiff notice of its intention to dismiss with prejudice, an opportunity to be heard in opposition to dismissal with prejudice and an opportunity to withdraw the request for voluntary dismissal and proceed with the litigation. *Id.*

In this case, the Court has declined to dismiss Morgan's Complaint **without** prejudice because Del Global would suffer plain legal prejudice if the Court were to do so. However, Del Global has now completed its discovery and filed its Motion for Summary Judgment. Further, this Court and the Sixth Circuit prefer that claims be adjudicated on their merits. Therefore, Del

Global's request to dismiss Morgan's Complaint **with** prejudice will not be granted. Morgan's Complaint will be adjudicated on its merits.

**DEL GLOBAL'S MOTION TO STRIKE**

Del Global moves to strike from the record portions of Morgan's Affidavit (doc. #35) and to exclude certain exhibits submitted by Morgan in support of his Memorandum In Opposition to Del Global's Motion for Summary Judgment. (Doc. #38.) The time has run and Morgan has not responded to Del Global's Motion To Strike. Therefore, each of the issues raised by Del Global in their Motion To Strike will be addressed seriatim.

Paragraphs 16 and 17 of Morgan's Affidavit

In Paragraph 16 of his Affidavit, Morgan states that a copy of the sales report received from Edith Williams is attached as Ex. G. Ex. G includes the sales report but it also includes a document entitled "Midwestern Region Orders Booked by Quarter 2002." However, at his Deposition, Morgan stated that he prepared the second page of Ex. 4 to his Deposition, which is the "Midwestern Region Orders Booked by Quarter 2002." The "Midwestern Region Orders Booked by Quarter 2002 is also the first page of Ex. G to Morgan's Affidavit.[9]

It is well established that, "a party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony." *Penny v. United Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997). In this case, paragraph 16 of Morgan's Affidavit, submitted in response to a motion for summary judgment, partially contradicts his earlier deposition testimony. While part of Ex. G to Morgan's Affidavit is a copy of the sales report that he received from Edith Williams, part of the Exhibit is

[9]The first page of Ex. 4 to Morgan's Deposition is the email from Edith Williams.

a document that Morgan prepared. Therefore, in the interest of justice and an adjudication on the merits, rather than strike paragraph 16 entirely, the Court will consider the "Midwestern Region Orders Booked by Quarter 2002" as a document prepared by Morgan and not a sales report provided to him by Edith Williams.

Del Global also wishes to strike paragraph 17 of Morgan's Affidavit. Paragraph 17 of Morgan's Affidavit provides that, "[f]rom the documentation set forth at Exhibit G, I was able to confirm total bookings of $19,491,207.93 in sales. As applied against the stated commission structure, the applicable commission calculation again exceeded the $100,000 cap under the Compensation Program Document."

Presumably Del Global wishes to strike paragraph 17 because it refers to Ex. G discussed above. However, part of Ex. G are sales reports provided by Edith Williams from which Morgan could arguably have confirmed the bookings that he claimed to have confirmed. Therefore, paragraph 17 will not be struck with the understanding that part of Ex. G is Morgan's work and not a document provided by Edith Williams.

Paragraph 8 of and Exhibit C To Morgan's Affidavit

Del Global wishes to strike paragraph 8 of Morgan's Affidavit because he refers to communications he received **from** Dan Pisano but paragraph 8 refers to Ex. C which is a string of emails sent from Morgan to Pisano. Additionally, Ex. C was not disclosed to Del Global.

Absent exceptional circumstances, the Federal Rules of Civil Procedure prohibit a party from disregarding their discovery obligations. Fed. R. Civ. P. 37(c)(1). Particularly, if a party fails to make the disclosures required by Rule 26(a), unless such failure is harmless or justified, the party is not permitted to use the documents, information or witnesses not properly disclosed.

*United States v. Brown*, 367 F.3d 549, 554 (6th Cir. 2004). Further, the burden is on the non-producing party to show that its actions were substantially justified or harmless. *Burney v. Rheem Manufacturing Co., Inc.*, 196 F.R.D. 659, 691 (M.D. Ala. 2000).

In this case, Del Global's counsel has submitted an affidavit stating that Ex. C was never produced or disclosed by Morgan. (Affidavit of Caroline M. DiMauro ("DiMauro Aff.") ¶ 10 Aug. 20, 2007.) Further, Morgan has provided no response or justification for his failure to provide Ex. C. Therefore, Ex. C will be struck and may not be submitted by Morgan in the future.

As for paragraph 8, it will not be struck. It is arguably not incorrect. In paragraph 8, Morgan indicates that he corresponded with and made numerous inquiries to Dan Pisano via email on certain dates. He also avers that he received a representation from Pisano that the calculations would be processed and paid the first pay period of the year. These statements may be true although Morgan may not have complete evidence thereof. Finally, in paragraph 8, Morgan avers that, "[a] copy of the communications is set forth as Ex. C hereto." While Ex. C may not be a copy of all of the communications between Morgan and Pisano, it certainly could be a copy of some of the communications.

Paragraph 18 of and Exhibit H to Morgan's Affidavit

Del Global seeks to strike paragraph 18 and Ex. H to Morgan's Affidavit because he did not produce or disclose Ex. H. In paragraph 18, Morgan avers that, "[i]n light of the activity surrounding the 2002 calculation, I was provided information from Annette DiGorga concerning the 2003 fiscal year sales. Ms. DiGorga provided an initial reconciliation demonstrating commission earned in the amount of $27,563.47. A copy of that reconciliation is attached hereto

as Ex. H."

As above, Del Global's counsel avers that Ex. H was never produced or disclosed by Morgan. (DiMauro Aff. ¶ 10.) Also, as above, Morgan has provided no response or justification for his failure to provide Ex. H. Therefore, Ex. H will be struck and may not be submitted by Morgan in the future.

As for paragraph 18 of Morgan's Affidavit, it will not be struck. It however, may have limited value because Ex. H, the supporting documentation has been struck.

Pages 3-20 of Ex. G to Morgan's Affidavit

Del Global's counsel avers that pages 3-20 of Ex. G were never produced or disclosed by Morgan. (DiMauro Aff. ¶ 10.) Also, as above, Morgan has provided no response or justification for his failure to provide pages 3-20 of Ex. G. Therefore, pages 3-20 of Ex. G will be struck and may not be submitted by Morgan in the future.

Sanctions

Del Global requests that the Court impose an appropriate sanction against Morgan for failing to comply with the rules of discovery including reasonable attorneys' fees for preparing its Motion To Strike. A court may sanction a party for failing to comply with the discovery rules including the imposition of reasonable attorneys' fees. Fed. R. Civ. P. 37(c)(1). In determining the appropriate sanctions, the court may consider the following factors: (1) the non-disclosing party's reasons for failing to provide the information; (2) the importance of the information; (3) the moving party's need for time and ability to respond to the proffered evidence; and (4) the court's ability to alleviate unfair prejudice through alternative measures. *Stallworth v. E-Z Serve Convenience Stores*, 199 F.R.D. 366, 369 n.3 (M.D. Ala. 2001).

In this case, Morgan has provided no reasons for failing to provide certain discovery. However, Morgan has been sanctioned because the unprovided discovery has been struck and may not be used by Morgan in the future. Further, Del Global will not be prejudiced because its Motion for Summary Judgment will be fairly adjudicated without consideration of the material that has been struck and with the understanding that the “Midwestern Region Orders Booked by Quarter 2002" is Morgan’s work and not that of Del Global. Finally, the court has been able to alleviate unfair prejudice to Del Global by these sanctions striking the exhibits and preventing Morgan from using them in the future.

However, Del Global was prejudiced in that it had to prepare its Motion To Strike because Morgan did not comply with the rules of discovery. Further, Morgan has offered no reasons therefore. Finally, while the alternative sanctions identified above are appropriate, they do not alleviate Del Global’s expense to process its Motion To Strike. Therefore, Del Global is given until not later than thirty days following entry of this order to submit a motion for reasonable attorneys’ fees for preparing and replying to its Motion To Strike. This request must provide the information required by the “*Lodestar* Method” which is the method used by this Court in similar situations. Morgan may respond to this motion and Del Global may reply, both within the time limits set forth in Local Rule 7.2(a)(2).

Summary

Del Global’s Motion To Strike is GRANTED in part and OVERRULED in part. Exs. C, H and pages 3-20 of Ex. G will be struck and may not be submitted by Morgan in the future. Del Global’s Motion for Summary Judgment will be adjudicated with the understanding that the “Midwestern Region Orders Booked by Quarter 2002" is Morgan’s work. None of the

paragraphs of Morgan's Affidavit will be struck although their value may be limited by the lack of supporting exhibits. Finally, Del Global may submit its motion for reasonable attorneys' fees as indicated above. The analysis next turns to the standard of review for motions for summary judgment.

**STANDARD OF REVIEW FOR MOTIONS FOR SUMMARY JUDGMENT**

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the

nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

However, the mere existence of a scintilla of evidence in support of the non moving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the non moving party is entitled to a verdict. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not …obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th

Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

Morgan's Complaint involves state-law contract-type claims brought in a federal court in Ohio. A federal court sitting in Ohio follows Ohio choice-of-law provisions. Ohio choice-of-law provisions provide that, where a conflict of law issue arises in a contract case, the law of the state where the contract is to be performed applies. *See Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.*, 453 N.E.2d 683, 685 (Ohio 1983).

In this case, Morgan was located in Ohio when he was employed by Del Global. Therefore, the contracts that he alleges to exist were to be performed in Ohio. As a result, Ohio law applies to Morgan's contract-type claims.

In reviewing an Ohio claim, this Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Northland Ins. Co. v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). Specifically, this Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the state."' *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998)). Also, to the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id.* (quoting *Bailey Farms. Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)).

**DEL GLOBAL'S MOTION FOR SUMMARY JUDGMENT**

Morgan claims that Del Global breached a contract when it failed to pay him all of the 2002 and 2003 sales commissions that he was due. (Compl. Count One.) In the alternative and in the absence of an express contract, Morgan claims that Del Global breached an implied contract for the same reason. (Compl. Count Two.) Morgan also claims that Del Global breached his employment contract when it failed to pay him for all of his unused vacation (Compl. Count Three) and violated the Fair Labor Standards Act ("FLSA") when it failed to pay him for various benefits (Compl. Count Four). In addition, Morgan claims that he has been deprived of benefits owed to him under a recognized employee welfare benefit plan in violation of Ohio law and the federal Employee Retirement Income Security Act ("ERISA"). (Compl. Count Five.) Further, Morgan claims that Del Global violated Ohio Rev. Code § 4113.15 when it failed to timely provide him with the sales commissions and pay for unused accrued vacation. (Compl. Count Six.) Finally, Morgan claims that all of the earnings and benefits withheld from him by Del Global are subject to promissory estoppel and the doctrine of conversion.[10] (Compl. Count Seven.)

Del Global now argues that it is entitled to summary judgment on each of Morgan's claims. Each of Del Global's arguments will be addressed seriatim.

<u>Breach of Contract</u>

In Count One of his Complaint, Morgan claims that Del Global breached the Sales Manager Compensation Program when it failed to provide him with the 2002 and 2003 sales

---

[10]In his Memorandum In Opposition to Del Global's Motion for Summary Judgment, Morgan argues that Del Global has not paid him the severance pay that he is entitled to. However, Morgan makes no claim for severance pay in his Complaint. Morgan's claim for severance pay will, therefore, not be considered. See *Day v. Sullivan*, 794 F. Supp. 801, 812 (S.D. Ohio 1991), *rev'd on other grounds*, 23 F.3d 1052 (6th Cir. 1994).

commissions that he was due. The first issue that must be addressed is whether the Sales Manager Compensation Program is a contract between Morgan and Del Global.

A contract is a promise, or a set of promises, actionable upon breach. *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002). To prove the existence of a contract, a party must establish the essential elements of a contract. *Juhasz v. Costanzo*, 761 N.E.2d 679, 684 (Ohio Ct. App. 2001). The essential elements of a contract are an offer, acceptance, contractual capacity, consideration, a manifestation of mutual assent and legality of object and of consideration. *Kostelnik*, 770 N.E.2d at 61 (citing *Perlmuter Printing Co. v. Strome, Inc.*, 436 F. Supp. 409, 414 (N.D. Ohio 1976). Regarding mutual assent, both parties to the contract must consent to its terms - there must be a meeting of the minds of both parties. *Juhasz*, 761 N.E.2d at 684.

In this case, the document entitled Sales Manager Compensation Program provides that, "[t]his document is designed to provide a comprehensive summary of the Del Power Conversion Group Sales Incentive Program for Fiscal 2002, excluding RFI Corp." The Sales Manager Compensation Program further provides that, "The conditions of this document form the basis for incentive implementation through Fiscal 2002, and neither represents a precedent for future years, or a binding contract between the parties."

Del Global argues that the Sales Manager Compensation Program is not a binding contract because there was no mutual assent by the parties nor was there any meeting of the minds as to the essential terms. In support, Del Global cites *Tohline v. Central Trust Co., N.A.*, 549 N.E.2d 1223 (Ohio Ct. App. 1988), *cause dismissed*, 534 N.E.2d 1202 (Ohio 1989), wherein an Ohio appeals court determined that a statement in an employee handbook that "this guide is not intended to be a contract or create contractual obligations" manifests the absence of mutual

assent to create a contract. *Tohline*, 549 N.E.2d at 1227. Two other Ohio appeals courts have reached the same conclusion. *Rigby v. Fallsway Equipment Co., Inc.*, 779 N.E.2d 1056, 1061 (Ohio Ct. App. 2002)(disclaimer language in an employee handbook together with an acknowledgment form precludes the employee handbook from becoming an employment contract); *Finsterwald-Maiden v. AAA South Central Ohio*, 685 N.E.2d 786, 789 (Ohio Ct. App. 1996)(where an employee handbook disclaims any intent to create a contractual relationship, there is no mutual assent by the parties to be bound by the handbook's provisions).

Morgan responds that Del Global's conduct conformed with an acceptance of the Sales Manager Compensation Program as a contract and Del Global affirmatively acknowledges the obligation to adhere to the Sales Manager Compensation Program. As a result, according to Morgan, a question of fact necessarily exists concerning the formation of an express contract. However, acting in accordance with a policy, as opposed to a contract, does not make the policy an express or implied-in-fact contract and Morgan presents no law to the contrary.

Morgan also argues that the term "or a binding contract between the parties" applies only to any contractual liability for future years. However, it is well settled that common words in a written document are to be given their ordinary meaning. *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146 (Ohio 1978). And, giving the common words in the Sales Manager Compensation Program document their ordinary meaning leads to the conclusion that Del Global did not intend the document to be a binding contract.

Finally, Morgan argues that, under Ohio law, courts may not give effect to any disclaimer of contractual liability which precludes an aggrieved party from receiving the full benefit of its bargain citing *Goddard v. General Motors Corp.*, 396 N.E.2d 761 (Ohio 1979). In *Goddard*, the

Ohio Supreme Court found that, "where a new car express warranty limits a buyer's remedy to repair and replacement of defective parts, but the new car is so riddled with defects that the limited remedy of repair and replacement fails its essential purpose, the buyer may institute an action to recover damages for breach of warranty under R.C. 1302.88(B)… ." *Goddard*, 396 N.E.2d at 765. However, *Goddard* is not persuasive here. The Sales Manager Compensation Program is not a new vehicle warranty, it does not expressly limit a remedy, and Morgan has not identified an Ohio statute that provides an alternate remedy.

In this case, reasonable minds will not differ. Del Global did not assent to the formation of an express or implied-in-fact contract with Morgan when it instituted the Sales Manager Compensation Program. The Sales Manager Compensation Program is, therefore, not an express or implied-in-fact contract. There are no genuine issues of material fact and Del Global is entitled to judgment as a matter of law on Count One of Morgan's Complaint. Count One of Morgan's Complaint for breach of contract is DISMISSED.

Breach of Implied Contract

In Count Two of his Complaint, Morgan alleges that Del Global breached an implied contract when it failed to pay the sales commissions rightfully owed to him. Del Global does not offer specific argument regarding breach of an implied contract but maintains that no contract exists because there was no mutual assent or meeting of the minds regarding an alleged contract to provide the 2002 and 2003 sales commissions.

There are three categories of contracts: express, implied in fact and implied in law. *Stepp v. Freeman*, 694 N.E.2d 510, 513 (Ohio Ct. App. 1997)(citing *Legros v. Tarr*, 540 N.E.2d 257, 262-63 (Ohio 1989)). "Express and implied-in-fact contracts differ from contracts implied in law

in that contracts implied in law are not true contracts." *Id.* (citing *Sabin v. Graves*, 621 N.E.2d 748, 751-52 (Ohio Ct. App. 1993), *cause dismissed*, 613 N.E.2d 648 (Ohio 1993)). Further, the existence of express or implied-in-fact contracts hinges upon proof of all of the elements of a contract. *Id.* (citing *Lucas v. Costantini*, 469 N.E.2d 927, 928-29 (Ohio Ct. App. 1983)).

In this case, there is not an express or implied-in-fact contract because language in the Sales Compensation Agreement clearly disavows the necessary assent to a contract as discussed above. Yet, Count Two of Morgan's Complaint alleges that an implied contract existed. The viability of Count Two of Morgan's Complaint turns, then, on whether an implied-in-law contract existed between him and Del Global.

"Implied-in-law contracts are a legal fiction used to effect an equitable result." *Id.* Because a contract in law is a tool of equity, the existence of an implied-in-law contract does not depend upon whether the elements of a contract are proven. *Id.* Further, for an implied-in-law contract to exist, there must be some injustice for which the law can provide a remedy. *R.L. Yocum Realty Co. v. Parks*, No. 1-96-1, 1996 WL 479580 at *2 (Ohio Ct. App. Aug. 13, 1996).

There is no meeting of the minds to form contracts implied in law. *Barker v. Century Insurance Group*, No. 06AP-327, 2007 WL 1600510 at *5 (Ohio Ct. App. June 5, 2007); *Staffilino Chevrolet, Inc. v. Balk*, 813 N.E.2d 940, 950 (Ohio Ct. App. 2004). For contracts implied in law, "civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain… ." *Barker*, 2007 WL 1600510 at *5*; see also Alpha Telecommunications, Inc. v. International Business Machines Corp.*, No. 06-4167, 2007 WL 2052189 at *3 (6th Cir. July 18, 2007). Finally, an implied-in-law contract may exist even if an express or implied-in-fact contract does not exist for the same topic. *Barker*, 2007 WL

160051 at *6 (citing *Hughes v. Oberholtzer*, 123 N.E.2d 393 (Ohio 1954)).

For example, even though minds of the parties did not meet as to some essential terms of a contract to furnish labor, one who has furnished labor may recover the reasonable value of the labor. *Id.* For another example, one who receives emergency medical services may be held liable to the health care provider pursuant to an implied-in-law contract. *Hailey v. MedCorp, Inc.*, No. L-0501238, 2006 WL 2640238 at *4 (Ohio Ct. App. Sep. 15, 2006). Finally, an implied-in-law contract for the payment of a real estate commission exists where the agent presents evidence that the real estate seller authorized the agent to produce a buyer under circumstances where a reasonable real estate seller would believe that the seller is expected to compensate the agent for those services. *D'Aurora v. King*, No. 98-JE-39, 1999 WL 420851 at *3 (Ohio Ct. App. June 14, 1999).

The existence of an implied-in-law contract is proven by acts, conduct and circumstances. *Id.* at *4. A promise to pay for services is implied only where the services are rendered under such circumstances that the party performing the services had a reasonable expectation of being paid for the services by the party for whom the services were rendered. *Id.*

In this case, there was no meeting of the minds to form an express or implied-in-fact contract. However, there is evidence that Del Global's conduct created a reasonable expectation that Morgan would be paid his 2002 and 2003 sales commissions in accordance with Del Global's Sales Manager Compensation Program.

Morgan worked as a Sales Manager for Del Global. In 2002, Del Global prepared a written document describing its Sales Manager Compensation Program which includes the payment of sales commissions. Del Global required Morgan to sign the document indicating that

he had read and understood the program and agreed to abide by its terms. Del Global President Pisano also signed the document. On the same day as Morgan signed the document, it was modified to include sales to GE-OEC and MDS Sciex in the computation of Morgan's commission, a modification presumably procured by Morgan.

Morgan continued to work as a Sales Manager for Del Global and Del Global eventually paid 2002 commissions to Morgan that it now says are in accordance with the Sales Manager Compensation Program. Del Global also engaged in extensive discussions with Morgan regarding the amount of his 2002 sales commission.

There is evidence that Pisano told Morgan that the commission program for 2003 would be the same as the commission program for 2002. Also, Del Global, although it has not yet paid them, has admitted liability to Morgan for some commissions for the 2003 fiscal year and provides some calculations based upon the policy that was in effect for 2002.

Therefore, there is evidence that an implied-in-law contract existed between Morgan and Del Global under which Morgan would perform as Del Global's Sales Manager and Del Global would pay Morgan sales commissions for fiscal years 2002 and 2003 based upon bookings directly resulting from Morgan's sales efforts. There is also a factual dispute as to the amount owed on the contract. Morgan calculated the 2002 commissions that he was due to be one amount and Del Global calculated a different amount.[11] As for the amount of the 2003 commissions, Del Global has calculated one amount and Morgan has presented evidence that the

[11]Del Global argues that Morgan's calculation is inadmissible evidence because it is "unsupported, self-serving and conclusory." However, while the calculation may be self-serving, it is not conclusory or unsupported. Morgan produced this evidence based upon documents provided to him by Del Global.

commission due to him is a greater amount although Morgan has not been provided with sales figures for the entire time during fiscal year 2003 that he was employed by Del Global. Therefore, there are genuine issues of material fact and Del Global is not entitled to judgment as a matter of law on Count Two of Morgan's Complaint for breach of an implied contract.

Breach of Employment Contract

In Count Three of his Complaint, Morgan alleges that Del Global breached his employment contract when it failed to pay him for all of his unused vacation. Del Global argues that it paid Morgan all of the amounts he was owed for his unused accrued vacation when his employment ended and Morgan has not stated any proper legal basis for this claim.

First, Morgan has stated a proper legal basis for this claim. He alleges that his contract of employment benefits included vacation pay. He further alleges that Del Global has refused to tender payment for all of his unused vacation pay.

Yet, Del Global does not argue that it did not owe Morgan for unused accrued vacation. Del Global presents evidence that it paid Morgan for 11 days of unused accrued vacation in his last paycheck dated June 12, 2003. (DiGorga Decl. ¶¶ 7, 9, Ex. O.) Del Global also presents evidence that it has confirmed and reconfirmed that its calculation regarding Morgan's unpaid vacation is correct. (Ferris Decl. ¶ 11.)

However, Morgan presents evidence to the contrary. Morgan presents evidence that he was entitled to pay for 21 days of unused accrued vacation. (Morgan Dep. 26, Ex. 21, Ex. 24.) Therefore, there are genuine issues of material fact as to the amount of unused accrued vacation due to Morgan. Del Global's Motion for Summary Judgment on Count Three of Morgan's Complaint for breach of his employment contract is OVERRULED.

Violation of FLSA

In Count Four of his Complaint, Morgan alleges that Del Global violated the FSLA when it failed to pay him various benefits including sick leave, personal leave and vacation pay. Del Global now argues that the FSLA does not require payment for time not worked such as vacations, sick leave and holidays. Morgan responds that Del Global has failed to pay him his earned and owing commissions and has failed to maintain accurate records as to the compensation owed to him.

The FLSA requires employers to pay covered employees at least the federal minimum wage and overtime pay for all hours worked over 40 in a work week. U.S. Department of Labor website http://www.dol.gov/esa/regs/compliance/whd/mwposter at Compliance Assistance - Basic Information. Specifically, the FLSA does not require payment for absence from work for vacation, holidays, illness or any other reasons. *Boll v. Federal Reserve Bank of St. Louis*, 365 F. Supp. 637, 647 (E.D. Mo. 1973), *aff'd*, 497 F.2d 335 (8th Cir. 1974). Therefore, Morgan's claim that Del Global violated the FSLA when it failed to pay him for sick leave, personal leave and vacation pay, all of which are payments for absence from work, is not supported by the FSLA.

Although not mentioned in Count Four, Morgan responded to Del Global's Motion for Summary Judgment that Del Global's failure to pay his earned and owing commissions violates the FSLA. However, since Morgan's allegation regarding earned and owing commissions does not apply to minimum wages or overtime pay, the FLSA is not applicable to this allegation either.

There are no genuine issues of material fact and Del Global is entitled to judgment as a matter of law on Count Four of Morgan's Complaint. Count Four of Morgan's Complaint for

violation of the FLSA is DISMISSED.

Violation of Ohio Law and ERISA

Morgan withdraws his claims arising under ERISA in his Memorandum In Opposition to Del Global's Motion for Summary Judgment. To this, Del Global does not object. Further, Morgan offers no authority or argument on violations of Ohio law other than those addressed elsewhere herein. Therefore, Count Five of Morgan's Complaint for violation of Ohio law and ERISA is DISMISSED.

Violation of Ohio Rev. Code § 4113.15

In Count Six of his Complaint, Morgan alleges that Del Global violated Ohio Rev. Code § 4113.15 by failing to timely pay benefits and compensation owned to him. Del Global's Motion for Summary Judgment does not address this allegation but its Reply Memorandum does. In its Reply, Del Global argues that summary judgment should be granted on this claim because it has paid Morgan for all of his earnings and benefits. Further, Morgan is not entitled to liquidated damages because the amount he is claiming for his sales commissions has been in dispute.

Ohio Rev. Code § 4113.15 requires an employer to pay a discharged employee his full wages including holiday and vacation payments, on the date of discharge. Ohio Rev. Code § 4113.15; *Massachusetts v. Morash*, 490 U.S. 107, 109 (1989). Section 4113.15 also provides for the payment of interest on unpaid wages under certain conditions. Ohio Rev. Code § 4113.15(B). Finally, an employer becomes a trustee of any such unpaid funds from the time a duty arises to make such payment. Ohio Rev. Code § 4113.15(C).

Del Global has presented evidence that it has paid all of the 2002 sales commissions and

all of the unused accrued vacation pay owed to Morgan. Morgan has presented evidence to the contrary. Further, Del Global has not paid the 2003 sales commissions which it says is owed, the amount of which is disputed by Morgan.[12]

Therefore, there are genuine issues of material fact as to whether Del Global paid the full wages that it owed Morgan upon his discharge. Also, Del Global is not entitled to judgment as a matter of law on Count Six of Morgan's Complaint for violation of Ohio Rev. Code § 4113.15. Del Global's Motion for Summary Judgment on Count Six of Morgan's Complaint is OVERRULED.

Conversion and Promissory Estoppel

Count Seven of Morgan's Complaint alleges two claims. He first alleges conversion in that Del Global has tortiously intercepted and converted his property. He also alleges promissory estoppel in that Del Global made promises and representations which it failed to meet with regard to sales commissions.[13]

Del Global argues that the conversion claim should be dismissed because Morgan cites no legal authority for his claim and does not establish any of the elements of such a claim. Del Global also argues that the promissory estoppel claim should be dismissed because there is no evidence of any promise or of any reasonable and forseeable reliance and no injury based upon

[12]Morgan's Complaint does not allege that he is owed severance pay. Further, Morgan has not signed the release required by Del Global's severance pay policy that may entitled Morgan to severance pay.

[13]Count Seven of Morgan's Complaint alleges that all earnings and benefits presently withheld from him by Del Global are subject to the doctrine of constructive trust. Since a constructive trust is a remedy, it will not be considered as one of Morgan's claims. *See Ferguson v. Owens*, 459 N.E.2d 1293, 1295 (Ohio 1984).

such reliance.

Conversion

Ohio recognizes the tort of conversion. *Zacchini v. Scripps-Howard Broadcasting Co.*, 351 N.E.2d 454, 456 (Ohio 1976), *rev'd on other grounds*, 433 U.S. 562 (1977). Conversion is a wrongful exercise of dominion over property in exclusion of the right of the owner. *Id.* Conversion is also the withholding of property from the rightful owner's possession under a claim inconsistent with the rightful owner's rights. *Id.* Only tangible chattels and intangible rights which are customarily merged in or identified with some document may be subject to conversion. *Id.* at 456-57.

The elements of a conversion claim are: (1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages. *City of Findlay v. Hotels.com, L.P.*, 441 F.Supp.2d 855, 865 (N.D. Ohio 2006). Further, demand and refusal are required which turn the otherwise lawful possession into an unlawful one by reason of a refusal to comply. *Id.*

Existing law generally allows actions for conversion to be based only upon the taking of identifiable, tangible personal property. *Wiltberger v. Davis*, 673 N.E. 2d 628, 634 (Ohio Ct. App. 1996). An action for conversion of money is generally not recognized except where the money is specifically identifiable. *Id.* Ohio courts have found that money is specifically identifiable when it is paid by a third party to the defendant for work performed by the plaintiff. *Id.* at 634, *City of Findlay*, 441 F.Supp.2d at 865; *Davis v. Flexman*, 109 F.Supp.2d 776, 808 and n.30 (S.D. Ohio 1999).

In this case, the money allegedly owed to Morgan is not identifiable tangible property.

Nor is it specifically identifiable money that was paid to Del Global by a third party for work performed by Morgan. Therefore, the money that Del Global allegedly owes Morgan is not subject to the tort of conversion. The analysis turns to Morgan's promissory estoppel claim.

Promissory Estoppel

As with the tort of conversion, Ohio recognizes the doctrine of promissory estoppel. *Talley v. Teamsters, Chauffeurs, Warehousemen, and Helpers, Local No.* 377, 357 N.E.2d 44, 47 (1976). The doctrine of promissory estoppel provides that, "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Id.* (citing Restatement of Contracts 2d (1973) § 90). The essence of a promissory estoppel is that "one party will not be permitted to deny that which, by his words, his acts, or his silence (when there was an obligation to speak), he has induced a second party reasonably and in good faith to assume and rely upon to that party's prejudice or pecuniary disadvantage." *Nilavar v. Osborn*, 711 N.E.2d 726, (Ohio Ct. App. 1998)(quoting *First Federal Savings & Loan Association of Toledo v. Perry's Landing, Inc.*, 463 N.E.2d 636, 647 (Ohio Ct. App. 1983)).

To prove a claim for promissory estoppel, a claimant must show: a promise, clear and unambiguous in its terms; reasonable and foreseeable reliance by the party to whom the promise was made; and injury resulting from the reliance. *Rigby*, 779 N.E.2d at 1061 (citing *Healey v. Republic Powdered Metals, Inc.*, 619 N.E.2d 1035 (Ohio Ct. App. 1992)).

In this case, Morgan has presented evidence that Del Global made a promise to pay him sales commissions for 2002 and 2003 and to pay him for unused accrued vacation when his

employment was terminated. These promises are clear and unambigouous. The amount of sales commission to be paid is set forth in a document that includes the rate and the definition of bookings to which the rate is applied. Morgan was required to read and understand the document and abide by its terms. Further, a promise to pay for unused accrued vacation is clear and unambiguous.

Morgan presents evidence that he relied upon representations by Del Global that, in exchange for his sales efforts, he would receive certain sales commissions. (Morgan Aff. ¶ 29.) There is evidence of sales in 2002 and 2003 that were attributed to Morgan. There is also evidence that Morgan was injured because, according to his calculations, he is owned additional 2002 commissions and he is owed more 2003 sales commissions than those calculated, and not yet paid, by Del Global. Therefore, Morgan has presented evidence of a claim of promissory estoppel for the 2002 and 2003 sales commissions.

Morgan, however, has not presented evidence that he relied upon the representations by Del Global that he would be paid for unused accrued vacation to his detriment. He, therefore, has not presented evidence of a claim of promissory estoppel for unused accrued vacation.

Conclusion

Del Global's Motion for Summary Judgment on Morgan's Seventh Claim for conversion and promissory estoppel is GRANTED in part and OVERRULED in part. The money that Del Global allegedly owes Morgan is not subject to the tort of conversion. However, Morgan has presented evidence of a claim of promissory estoppel for the 2002 and 2003 sales commissions. Yet, he has not presented evidence satisfying a claim of promissory estoppel for the unpaid accrued vacation. Morgan's conversion claim and promissory estoppel claim for unpaid accrued

vacation are DISMISSED. Morgan's promissory estoppel claim for 2002 and 2003 sales commissions remains to be adjudicated.

**SUMMARY**

Morgan's Motion To Dismiss **Without** Prejudice (doc. #26) is OVERRULED because Morgan has not been diligent in prosecuting his complaint and Del Global would be prejudiced by dismissal **without** prejudice. Also, in the interest of adjudication on the merits, Del Global's request that Morgan's Complaint be dismissed **with** prejudice is not granted.

Del Global's Motion To Strike (doc. #35) is GRANTED in part and OVERRULED in part. Exhibits C, H and pages 3-20 of Ex. G will be struck and may not be submitted by Morgan in the future. Del Global's Motion for Summary Judgment is adjudicated with the understanding that the "Midwestern Region Orders Booked by Quarter 2002" is Morgan's work. None of the paragraphs of Morgan's Affidavit will be struck although their value may be limited by the lack of supporting Exhibits. Finally, Del Global may submit its motion for reasonable attorneys' fees for preparing and replying to its Motion To Strike.

Turning finally to Del Global's Motion for Summary Judgment (doc. #27), it is GRANTED in part and OVERRULED in part. Count One of Morgan's Complaint for breach of contract is DISMISSED because Morgan has failed to show all of the elements of an express or implied-in-fact contract. Count Two for breach of an implied contract is, however, not dismissed because there are genuine issues of material fact as to whether there is a implied-in-law contract and as to whether all sales commissions were paid pursuant to an implied-in-law contract between Morgan and Del Global for payment of 2002 and 2003 sales commissions. Count Three for breach of an employment contract is also not dismissed because there is a genuine issue of

material fact as to the number of unpaid accrued vacation days that Morgan was entitled to when his employment was terminated. Count Four of Morgan's Complaint for violation of the FLSA is DISMISSED because the actions about which Morgan complains are not subject to the FLSA. Morgan has withdrawn his ERISA claim brought as Count Five of his Complaint. Count Six of Morgan's Complaint for violation of Ohio Rev. Code § 4113.15 is not dismissed because there are genuine issues of material fact as to whether Del Global paid the full wages that it owed Morgan upon his discharge and Del Global is not entitled to judgment as a matter of law. Finally, the conversion claim brought in Count Seven of Morgan's Complaint is DISMISSED because the claims he brings are not subject to the tort of conversion. The promissory estoppel claim regarding 2002 and 2003 commissions Morgan brings in Count Seven is not dismissed but he has not presented evidence showing all of the elements of a promissory estoppel claim regarding unpaid accrued vacation. Count Two of Morgan's Complaint for breach of an implied contract, Count Three for breach of an employment contract, Count Six for violation of Ohio Rev. Code § 4113.15 and the promissory estoppel claim for 2002 and 2003 commissions brought in Count Seven remain to be adjudicated.

**DONE** and **ORDERED** in Dayton, Ohio, this Twenty-Ninth day of October, 2007.

**s/Thomas M. Rose**

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record